## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

BONNIE THAO, individually and )
as parent of AT, MT, NT, and ST, )
et al., )
          )
    Plaintiffs, )
          )
         v. )  **2:21-cv-00240-JDL**
          )
LH HOUSING, LLC, et al., )
          )
    Defendants. )

### ORDER ON DEFENDANTS' MOTION TO DISMISS

Plaintiffs Bonnie and Blong Thao, individually and on behalf of their four minor children, (the "Thaos") assert nine state-law claims arising out of their experience renting an allegedly uninhabitable home. The Defendants are LH Housing, LLC (the owner of the property) and Eric Holsapple (the current sole member of LH Housing). The nine claims are asserted against both Defendants: (1) fraud, (2) violation of the Maine Uniform Fraudulent Transfer Act, (3) violation of the Maine Unfair Trade Practices Act, (4) breach of contract, (5) conversion, (6) breach of implied warranty of fitness for human habitation, (7) wrongful eviction, (8) negligence, and (9) negligent misrepresentation.

The Defendants filed a motion to dismiss (ECF No. 6) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) seeking the dismissal of: (1) all claims for lack of subject-matter jurisdiction; (2) all claims as to Holsapple for failure to allege any facts supporting his individual liability; (3) four claims as to both Defendants for failure to state a claim; and (4) four claims as to both Defendants due

to the statutes of limitations.  I denied (ECF No. 13) the motion to dismiss with respect to the subject-matter-jurisdiction issue.  For the reasons I will explain, I now grant the motion to dismiss in part with respect to all claims against Holsapple, the Maine Unfair Trade Practices Act claim brought by the Thao children against LH Housing, the fraudulent transfer claim under the Maine Uniform Fraudulent Transfer Act against LH Housing, and the fraud claim against LH Housing.  The Defendants' motion to dismiss is otherwise denied.

## I.  ALLEGED FACTS

A representative of LH Housing named Russell Oakes showed a rental home to the Thaos sometime before August 1, 2015.  It was in poor condition.  The windows were broken, and it was littered with trash, including hazardous drug paraphernalia.  Oakes promised that it would be cleaned and repaired before the Thaos moved in, and the Thaos signed a lease agreement with LH Housing.

When the Thaos moved in on August 1, 2015, none of the promised repairs had been completed.[1]  The Thaos also noticed that the carpet and couch often felt damp.  On or about August 28, 2015, the toilets stopped flushing properly.  The property manager told them he could not address the problem immediately.  It turned out that the toilet problem was related to a sewage leak from a pipe in the basement that had begun around the same time.  A series of plumbers (sent by a representative of LH Housing) attempted to fix the problem, but the toilets continued to malfunction,

---

[1] The parties stipulated to this move-in date at the hearing on April 12, 2022.  All other facts are taken from the complaint.

backing up into the bathtub.[2]  One plumbing company told the Thaos that the sewage leak was caused by a clog in the pipes.  A representative of LH Housing falsely accused Bonnie Thao of causing the plumbing problems by flushing tampons or baby wipes.  Because of the sewage—which was not cleaned up until November 2015—every member of the Thao family became ill and one of the children needed to be taken to the emergency room.

Sometime before early October 2015, LH Housing told the Thaos not to enter the basement because it was a "separate unit."  Blong Thao disregarded that instruction in early October 2015 because the Thaos had blown a fuse and he needed to find the fuse box.  When he entered the basement, he discovered raw sewage leaking from a pipe, and the floor was covered in feces, tampons, mold, toilet paper, and loose cat litter.[3]  LH Housing had used the cat litter to cover up past sewage leaks that happened before the Thaos moved in.  Sometime on or after October 27, 2015,

---

[2] In their complaint, the Thaos attribute various conduct and statements to both "Defendants," including coordinating the response to the malfunctioning toilets. *E.g.*, ECF No. 1 ¶¶ 25, 27, 32.  I interpret these attributions as the Thaos' legal conclusion about Holsapple's liability because the complaint never plausibly alleges that the Thaos had contact with or entered into any agreements with Holsapple, or even that he was aware of the Thaos.  *See infra* Part II(B).  The complaint does, however, allege that the Thaos were shown the property by LH Housing's representative; that they entered into a lease agreement with LH Housing; that they received communications from multiple property managers; and that they spoke with a new property manager named Sara McKee who was acting on behalf of LH Housing.  Accordingly, when the complaint attributes conduct to both Defendants without any specific allegations of Holsapple's involvement, I do not credit the Thaos' legal conclusion of Holsapple's liability and instead interpret the complaint as attributing the relevant conduct to unnamed representatives of LH Housing.  *See In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 750 (1st Cir. 2016) (noting that, when reviewing a motion to dismiss for failure to state a claim, "we assume the truth of 'the raw facts' set forth in the complaint" but "need not credit the plaintiffs' 'legal conclusions or characterizations'" (quoting *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 27 (1st Cir. 2012))).

[3] The complaint and the Thaos' submissions do not explain the alleged relationship, if any, between (1) the basement leak that began in late August and that was explained to the Thaos by a plumbing company as having been caused by a clog in the pipes and (2) the basement leak that Blong Thao discovered in early October when he disregarded LH Housing's instruction not to enter the basement.

Property Manager Sara McKee from LH Housing told the Thaos that the sewage was "just irrigation water."

In the fall of 2015, the Thaos became aware that their rental home had extensive mold in it. The carpet and furniture were consistently damp, mold grew on the Thaos' personal property, and the Thaos experienced significant mold-related health problems. Sometime on or after October 27, 2015, Property Manager McKee wiped mold off the furniture and told Bonnie Thao that "you can clean that up." A neighbor told the Thaos that water had been flowing through the home's basement for years, and the Thaos infer from that statement that the mold problem existed before they moved in and that LH Housing knew about it.

The Thaos contacted the town's Code Enforcement Officer, who came to the property in late October 2015 and immediately condemned it. He told them to leave with a few belongings. They left behind a significant amount of personal property. They also rejected LH Housing's offer to place them at a different property and thus became homeless.

LH Housing put the personal property that the Thaos had left behind in a room with a water leak. At this location, their personal property suffered additional damage. LH Housing refused to help the Thaos remediate their personal property and instead demanded to know when the Thaos would retrieve it. In January 2016, LH Housing placed the Thaos' personal property under a tarp in the driveway. After refusing to respond to the Thaos' inquiries about their personal property, LH Housing eventually put it in a storage unit, where it was further damaged. When the Thaos

were unable to retrieve their personal property due to their homeless status, LH Housing disposed of most of the items.

The Thaos served notice to LH Housing of their claim under the Maine Unfair Trade Practices Act on or about January 6, 2016.  LH Housing then transferred or sold unspecified real property to another LLC.  LH Housing defaulted in a recent foreclosure action and, on information and belief, the Thaos allege LH Housing is currently undercapitalized.

Turning to the allegations by the Thaos against Holsapple, he was one of four members of LH Housing in 2015 and is the sole member now.  Holsapple and unidentified others helped (in an unspecified way) a previous member of LH Housing to purchase run-down properties and to transfer them for no value to LH Housing. The Thaos allege, on information and belief, that Holsapple, LH Housing, and the same former member of LH Housing comingled their assets.

The Thaos also allege that both LH Housing and Holsapple are generally involved in a wide-ranging pattern of fraud beyond the misconduct related to the Thaos' experience renting the home and that is not alleged to have harmed the Thaos. I do not reproduce these allegations here because the Thaos cannot assert the rights of third parties not before the Court.  *See Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) ("We have adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))).  While litigants have standing under special circumstances to assert the rights of third parties, the Thaos have not alleged that those circumstances exist here vis-à-vis the other alleged

victims of the Defendants. *See id.* ("First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right. Second, we have considered whether there is a 'hindrance' to the possessor's ability to protect his own interests." (citation omitted)). As such, this portion of the complaint does not bear on the resolution of the instant motion to dismiss.

Relatedly, the complaint improperly attempts to incorporate by reference the facts alleged in a separate 62-page complaint brought by different plaintiffs against a group of defendants including LH Housing and Holsapple. *See* Am. Compl., *Douglas v. Lalumiere*, No. 2:20-cv-00227 (D. Me. Sept. 15, 2020), ECF No. 11. "[A]llegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference." *Mass. Mut. Life Ins. Co. v. Residential Funding Co.*, 843 F. Supp. 2d 191, 214 n.15 (D. Mass. 2012) (alteration in original) (quoting 5A Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice & Procedure* § 1326 (4th ed. 2022)); *accord Neff v. Comm'rs of Schuylkill Cnty. Halcovage, Bender & Hess*, CIVIL ACTION NO. 3:21-CV-00993, 2021 WL 4593577, at *3 n.4 (M.D. Pa. Oct. 6, 2021); *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1302 n.1 (N.D. Ala. 2019); *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 Civ. 6705, 2014 WL 1673351, at *9 (S.D.N.Y. Apr. 28, 2014).

I next evaluate the Defendants' arguments concerning whether the Thaos allege sufficient facts to state viable causes of action. After that, I address the Defendants' arguments that certain causes of action are time-barred.

## II.  FAILURE TO STATE A CLAIM

### A.    Legal Standard

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Additionally, a court may consider facts and inferences "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Although conclusory legal

statements may "provide the framework of a complaint, they must be supported by factual allegations."  *Id.*

Finally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "We have explained that 'the circumstances to be stated with particularity under Rule 9(b) generally consist of 'the who, what, where, and when of the allegedly misleading representation.'"  *Dumont v. Reily Foods Co.*, 934 F.3d 35, 38 (1st Cir. 2019) (alterations omitted) (quoting *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016)).

## B.   Claims Against Holsapple

Holsapple argues that all nine claims must be dismissed as to him for two reasons: first, because the complaint does not allege any misconduct by him; and second, because there is no basis to pierce the corporate veil to hold him liable for the actions of LH Housing.  The Thaos respond that Holsapple is personally liable as a member of LH Housing who participated in the conduct alleged in the complaint.  The Thaos also contend that the appropriateness of veil-piercing cannot be decided at the motion-to-dismiss stage.  I address the sufficiency of the allegations about Holsapple's individual participation first, and then turn to consider the allegations pertaining to piercing the corporate veil.

### 1.   Misconduct by Holsapple

"Corporate officers who participate in wrongful acts can be held liable for their individual acts, and such liability is distinct from piercing the corporate veil."  *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d 189.  However, "[a]

person who is a member of a limited liability company is not liable, solely by reason of being a member, . . . in any . . . manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, agent or employee of the limited liability company." 31 M.R.S.A. § 1544 (West 2022).

The Thaos fail to plausibly allege any acts or omissions by Holsapple that could provide the factual basis for any of their nine claims against him. He is not alleged to have made any statements, fraudulently transferred any assets, entered into any agreements with the Thaos, negatively affected their personal property, failed to take any action that he had a duty to perform, directed any of LH Housing's alleged misconduct toward the Thaos, or been aware of the Thaos or the fact that they were renting a home from LH Housing. Although Holsapple was one of four members of LH Housing in 2015, that status does not make him liable for LH Housing's conduct. *See id.* At most, the complaint alleges in a conclusory fashion that Holsapple participated in various frauds that did not harm the Thaos.

Accordingly, unless there is a plausible basis for piercing the corporate veil, the entire complaint is subject to being dismissed as to Holsapple for failure to sufficiently allege facts supporting any of the nine stated causes of action.

## 2. Piercing the Corporate Veil

"Whether the corporate form should be disregarded involves questions of fact for a fact-finder to decide," *Blue Star Corp. v. CKF Props., LLC*, 2009 ME 101, ¶ 43, 980 A.2d 1270, but a plaintiff must nonetheless plausibly allege facts that, if true, would support piercing the corporate veil, *Saunders v. Getchell Agency*, No. 1:13-cv-

00244, 2014 WL 559040, at *8 (D. Me. Feb. 11, 2014) ("Thus, based on the record before the Court on this motion to dismiss, there are no facts upon which [the defendant] could be found liable on . . . the 'piercing the corporate veil' . . . theory of liability."); *Fisher v. Kadant, Inc.*, Civil Action No. 07-12375, 2008 WL 11389384, at *3 (D. Mass. Nov. 19, 2008) ("Plaintiffs must plead a proper factual basis for piercing the corporate veil . . . ."). As such, the Thaos must plausibly allege that "(1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Blue Star*, 2009 ME 101, ¶ 43, 980 A.2d 1270.

Regarding the first requirement, "[t]he Law Court has pointed toward several factors which may indicate that the corporate form has been abused and should be disregarded: '(1) common ownership; (2) pervasive control; (3) confused intermingling of business activity, assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.'" *Levesque v. Iberdrola, S.A.*, No. 2:19-cv-00389, 2021 WL 3476092, at *10 (D. Me. Aug. 6, 2021) (quoting *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 7, 720 A.2d 568).

The Thaos allege—on information and belief only—that Holsapple and LH Housing comingled funds, an assertion that pertains to factor three. But the First Circuit has explained that the phrase "upon information and belief" is meant to

signify that allegations are "based on secondhand information that the asserting party believes to be true," *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 n.5 (1st Cir. 2012) (alteration omitted) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011)), and thus should not be used to allege "pure speculation," *id.* at 44.  I do not credit the Thaos' comingling allegation because the complaint does not allege any supporting facts, and, if the Thaos "had any facts to support this assertion, they should have been set forth" in the complaint. *Id.*  Nor have the Thaos alleged sufficient facts related to Holsapple generally or the alleged comingling in particular "to create a reasonable expectation that discovery would be anything more than a shot in the dark." *Parker v. Landry*, 935 F.3d 9, 19 (1st Cir. 2019) ("[A] plaintiff can open the door to discovery only if she first alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of actionable misconduct." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007))); *see also Menard*, 698 F.3d at 45 ("Where modest discovery may provide the missing link, the district court has discretion to allow limited discovery . . . .").  Additionally, the Thaos conceded at the hearing that they have no information on the alleged comingling beyond the speculation in the complaint.

The Thaos similarly allege on information and belief that LH Housing is undercapitalized and at or near insolvency, which would be relevant under factors four and eight.  However, the only specific fact that they allege to support these assertions is that LH Housing was a defendant in a recent foreclosure action and defaulted in that case.  Yet LH Housing was a lienholder in that case, not the borrower, and, contrary to the Thaos' assertion, the judgment in that case does not

establish that LH Housing does not have any assets.  Judgment of Foreclosure and Sale at 2, *CAF-REO-1 LLC v. LH Acquisitions LLC*, No. 2:20-cv-00333 (July 29, 2021), ECF No. 48.  The Thaos also allege that LH Housing transferred real property to another LLC for no value, but that allegation is conclusory and, in any event, would not be enough by itself to establish that LH Housing "is merely the alter ego" of Holsapple.  *Theberge v. Darbro, Inc.*, 684 A.2d 1298, 1301 (Me. 1996).

The Thaos also allege that Holsapple used LH Housing to promote fraud that did not harm the Thaos (which might go to factor twelve), but I do not credit these allegations because they are entirely conclusory.[4]  Finally, the Thaos allege that Holsapple somehow helped another member of LH Housing to deed properties to LH Housing for no value at an unspecified time.  The Thaos have not articulated how this information, if true, would support piercing the corporate veil.

I conclude that the Thaos do not plausibly allege that Holsapple, who was one of four members of LH Housing in 2015, abused LH Housing's corporate form. Because the Thaos also fail to allege any relevant misconduct by Holsapple individually, the entire complaint is properly dismissed as to Holsapple.  I now turn to evaluate whether the Thaos similarly fail to satisfy the Rule 12(b)(6) standard as to their claims against LH Housing.

## C.  Claims Against LH Housing

LH Housing argues that the Thaos fail to state a claim against it for: (1) fraud, (2) negligent misrepresentation, (3) violation of the Maine Unfair Trade Practices Act,

---

[4] For that reason, I need not decide whether a corporation's misconduct unrelated to a plaintiff's claims can, under Maine law, support a plaintiff's effort to pierce the corporate veil.

and (4) violation of the Maine Uniform Fraudulent Transfer Act.  I address each in turn.

### 1. Fraud

The Thaos allege that LH Housing committed fraud by affirmatively misrepresenting material facts throughout 2015, starting before they signed the lease and ending when the Thaos vacated the property.  LH Housing argues that the Thaos fail to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b).  The Thaos rejoin that they sufficiently allege multiple fraudulent statements by LH Housing before and after they moved in, including statements about cleaning the home, the mold, and cleaning and safeguarding their personal property.

"[A] defendant is liable for fraud or deceit if he (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to [her] damage."  *Francis v. Stinson*, 2000 ME 173, ¶ 38, 760 A.2d 209 (alterations in original) (quoting *Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979)).  "Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to [her]."  *Id.* (alteration in original) (quoting *Letellier*, 400 A.2d at 376).  Again, to sufficiently allege fraud, a plaintiff must specify with particularity the who, what, where, and when of the allegedly misleading statement.  *Dumont*, 934 F.3d at 38.

The complaint contains only one statement that may satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) as well as the elements of

fraud.  That statement is Oakes's comment during the initial viewing of the home that it would be repaired before August 1, 2015.  For that statement, the Thaos allege the who (Oakes), the what (a promise to repair), the where (at the home), and the when (immediately before signing the lease agreement).  However, I need not address whether the Thaos successfully state a claim for fraud based upon this statement because any such claim would be time-barred, for the reasons I will explain in Part III(B).

None of the other statements alleged in the complaint both satisfy the elements of fraud and are alleged with the necessary particularity.  The Thaos do not allege any facts indicating the falsity of the property manager's statement that he could not address the Thaos' plumbing problem immediately.  They do not allege that they relied upon the accusation from an unnamed representative of LH Housing that Bonnie Thao caused the plumbing problems.  Regarding the statement that the Thaos should not enter the basement because it was a separate unit, the complaint does not specify the speaker or the location, and the timing is alleged vaguely as sometime before early October 2015.  The Thaos do not allege justifiable reliance on Property Manager McKee's statement that the sewage was "just irrigation water."  That statement is alleged to have happened sometime on or after October 27, 2015, and there is no suggestion in the complaint that the Thaos believed her.  To the contrary, they moved out in late October 2015.  The same is true for Property Manager McKee's statement, again sometime on or after October 27, 2015, that "you can clean [the mold] up."  Finally, the complaint does not include any alleged representations from

14

LH Housing to the Thaos about cleaning up the sewage or any allegedly false statements pertaining to cleaning or protecting the Thaos' personal property.

## 2. Negligent Misrepresentation

The Thaos allege that LH Housing made negligent misrepresentations before the signing of the lease agreement, throughout the duration of their tenancy, and after they moved out.  LH Housing focuses exclusively on the statement by Oakes about repairing the home.  LH Housing argues that this statement was not misleading and that the Thaos did not rely on it, seemingly because they moved in after realizing that LH Housing had failed to address the home's poor condition.  The Thaos counter that they allege negligent misrepresentations beyond the promise to repair.

"The Maine tort of negligent misrepresentation has the following elements: 1) the plaintiff was supplied false information by the defendant; 2) of a material fact; 3) the defendant did not exercise reasonable care or competence in communicating the information; and, [4]) the plaintiff justifiably relied on that false information causing him economic harm." *Knowlton v. Shaw*, 791 F. Supp. 2d 220, 261 (D. Me. 2011) (footnote omitted) (citing *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996)).

The Thaos sufficiently allege at least one negligent misrepresentation.  The complaint alleges that sometime before early October 2015, LH Housing told the Thaos not to enter the basement because it was a "separate unit."  The Thaos also allege that LH Housing knew about the condition of the basement, citing the presence of the loose cat litter and a neighbor's statement that water had been flowing through the basement for years.  Viewed most favorably to the Thaos, LH Housing's

admonition not to enter the basement because it was another unit was false as to the reason why the Thaos should not enter the basement and made without reasonable care under the circumstances.  The Thaos arguably relied on this statement by staying out of the basement, which prevented them from learning about its hazardous state until a fuse blew in early October 2015.  Accordingly, the motion to dismiss is denied with respect to whether the Thaos sufficiently state a claim against LH Housing for negligent misrepresentation.

### 3.  Maine Unfair Trade Practices Act

According to the complaint, the Maine Unfair Trade Practices Act ("MUTPA") claim is premised upon multiple instances of unfair or deceptive acts and practices predating the lease agreement, during the Thaos' tenancy, and extending beyond when they left the home.  LH Housing argues that the MUTPA claim fails because the Thaos could have avoided leasing the home and because the Thaos knew the condition of the home before they moved in.  LH Housing also contends that the children of the Thao family cannot pursue a MUTPA claim because they were not parties to the lease agreement.  The Thaos respond that their injuries were unavoidable and that their decision to move in despite LH Housing's failure to repair does not absolve LH Housing.  The Thaos do not dispute that the Thao children cannot pursue a MUTPA claim.

"Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice [that is unfair or deceptive] may bring

an action . . . ." 5 M.R.S.A. § 213 (West 2022). "An act or practice is *unfair* if it: (1) causes, or is likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition." *Bowen v. Ditech Fin. LLC*, No. 2:16-cv-00195, 2017 WL 4183081, at *19 (D. Me. Sept. 20, 2017) (emphasis added) (citing *State v. Weinschenk*, 2005 ME 28, ¶ 16, 868 A.2d 200). "An act or practice is *deceptive* if 'it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances . . . , regardless of a defendant's good faith or lack of intent to deceive.'" *Id.* (emphasis added) (quoting *Weinschenk*, 2005 ME 28, ¶ 17, 868 A.2d 200).

As with the negligent misrepresentation claim, LH Housing's statement that the Thaos should not go into the basement because it is a separate unit is a sufficient factual basis for a MUTPA claim. Viewed in the light most favorable to the Thaos, the statement was deceptive within the meaning of MUTPA because LH Housing was trying to keep the Thaos out of the basement to prevent them from discovering its hazardous condition. However, the Thao children cannot assert a MUTPA claim because they did not lease the property from LH Housing. *See Hoglund ex rel. Johnson v. DiamlerChrysler Corp.*, 102 F. Supp. 2d 30, 31 (D. Me. 2000) (granting a motion to dismiss "[b]ecause this lawsuit is brought by [a child], not his parents, and because [the child] did not purchase the automobile that allegedly caused his injuries").

For these reasons, Bonnie and Blong Thao sufficiently plead a MUTPA claim against LH Housing, but the MUTPA claims of the Thao children are dismissed.

### 4. Maine Uniform Fraudulent Transfer Act

For their Maine Uniform Fraudulent Transfer Act ("MUFTA") claim, the Thaos theorize that LH Housing intended to hinder, delay, or defraud them by transferring unspecified real property to another LLC after the Thaos served notice of their MUTPA claim so that the Thaos would be unable to collect on any judgment against LH Housing. LH Housing contends that the Thaos do not sufficiently allege a MUFTA claim because, among other reasons, they fail to identify any specific transactions that placed assets of LH Housing beyond the Thaos' reach. The Thaos counter that they do not need to amend their complaint to specify the allegedly fraudulent transfers because LH Housing knows which properties it transferred and because the complaint describes (1) LH Housing's fraudulent scheme (by which the Thaos appear to mean the conclusory allegations of misconduct by LH Housing toward third parties) and (2) the foreclosure action, which they contend shows that LH Housing is insolvent (and which, as already discussed, involved LH Housing merely in its capacity as an alleged lienholder). The Thaos also attach to their response memorandum a set of documents that the Thaos characterize as evidence that LH Housing transferred various properties for free to another LLC.

MUFTA "permits a creditor to challenge transfers where there was either actual or constructive intent to defraud." *Dev. Specialists, Inc. v. Kaplan*, 574 B.R. 1, 5 (D. Me. 2017). "A transfer is voidable if it is fraudulent . . . ." *Off. Post Confirmation Comm. of Holding Unsecured Claims v. Markheim*, 2005 ME 81, ¶ 11, 877 A.2d 155. One way for an asset transfer to be fraudulent is if the debtor acted with actual intent to hinder, delay, or defraud a creditor. 14 M.R.S.A. § 3575(1)(A) (West 2022).

"[T]he plaintiff in a fraudulent transfer suit must plead and later prove the existence of an asset that would have been available to satisfy an unsecured creditor's claim if the transfer had not been made . . . ." *In re Calais Reg'l Hosp.*, 616 B.R. 449, 455 (Bankr. D. Me. 2020). Thus, a plaintiff must "identify, with precision, the interest in property that [the defendant] transferred or the asset it disposed of, or parted with, for [M]UFTA purposes." *Id.* Additionally, the First Circuit has observed that "Rule 9(b)'s heightened pleading requirements apply not only to claims of fraud simpliciter but also to related claims as long as the central allegations of those claims 'effectively charge fraud.'" *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020) (quoting *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017)). For that reason, the First Circuit expressed some approval for (without deciding whether to adopt) the Second Circuit's rule that Rule 9(b) applies to fraudulent transfer claims involving allegations of intent to hinder, delay, or defraud. *Id.* (citing *Sharp Int'l Corp. v. State St. Bank & Tr. Co.*, 403 F.3d 43, 56 (2d Cir. 2005)).

If Rule 9(b) applies to the Thaos' MUFTA claim (which is based on LH Housing's alleged intent to hinder, delay, or defraud), then the claim must be dismissed for failure to specify the who, what, where, and when of the allegedly fraudulent transfers. But even if Rule 9(b) does not apply, the Thaos fail to state a MUFTA claim because the complaint does not identify with any specificity the properties that LH Housing is alleged to have fraudulently transferred. The Thaos' argument that they do not need to identify the properties because LH Housing knows which assets it transferred is inconsistent with the plausibility pleading standard. *See Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads

19

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Finally, I do not consider the new materials that the Thaos have attached to their response memorandum (ECF No. 14-1).  These documents are not part of the motion-to-dismiss record, which, as already discussed, consists of the allegations of the complaint, documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.  *See Rodríguez-Reyes*, 711 F.3d at 53.  The new materials cite to book and page numbers from registries of deeds of unspecified counties but do not themselves appear to be public records.  Furthermore, the Thaos do not explain the origin of the documents or why they are reliable.  *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (concluding that the public records that a court may consider when deciding a motion to dismiss "appears limited, or nearly so, to documents or facts subject to judicial notice under Federal Rule of Evidence 201").

For the foregoing reasons, the Thaos fail to sufficiently allege a MUFTA violation by LH Housing.  I next address LH Housing's argument that four of the Thaos' causes of action are time-barred.

### III.  STATUTES OF LIMITATIONS

#### A.  Legal Standard

"Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that 'the

facts establishing the defense [are] clear "on the face of the plaintiff's pleadings."" *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)). "The key is whether the complaint and any documents that properly may be read in conjunction with it show beyond doubt that the claim asserted is out of time." *Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 17 (1st Cir. 2004).

In Maine, "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues . . . except as otherwise specially provided." 14 M.R.S.A. § 752 (West 2022). "Maine courts generally consider an action accrued 'when a plaintiff received a judicially recognizable injury,' no matter when the injury was discovered." *Erlich v. Ouellette, Labonte, Roberge & Allen, P.A.*, 637 F.3d 32, 35 (1st Cir. 2011) (quoting *McLaughlin v. Superintending Sch. Comm. of Lincolnville*, 832 A.2d 782, 788 (Me. 2003)). "Thus, a contract claim 'accrues at the time of breach,' and a tort claim 'accrues when "the plaintiff sustains harm to a protected interest."'" *Id.* (first quoting *Dunelawn Owners' Ass'n v. Gendreau*, 750 A.2d 591, 595 (Me. 2000); and then quoting *McLaughlin*, 832 A.2d at 788).

However, if "a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto *discovers* that he has just cause of action." 14 M.R.S.A. § 859 (West 2022) (emphasis added). Outside of the fraud context, the Law Court has limited the discovery rule "to three discrete areas" not relevant here: "[1] legal malpractice, [2] foreign object and negligent diagnosis medical malpractice, and [3] asbestosis." *Johnston v. Dow & Coulombe, Inc.*, 686 A.2d 1064, 1066 (Me. 1996) (footnotes omitted). Separate from

the discovery rule, a plaintiff may allege "continuing" conduct to seek refuge from the date-of-injury rule under limited circumstances that are not present in this case.  *See Baker v. Farrand*, 2011 ME 91, ¶ 29, 26 A.3d 806 (applying the continuing negligent treatment doctrine to medical malpractice claims); *Packgen, Inc. v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 2019 ME 90, ¶ 34, 209 A.3d 116 (declining to recognize the same in the legal malpractice context because "the applicability of the continuing negligence doctrine to the medical malpractice statute of limitations was based firmly 'on the language and authority of the Health Security Act'" (quoting *Baker*, 2011 ME 91, ¶ 30, 26 A.3d 806)).

LH Housing contends that four claims—fraud, negligent misrepresentation, breach of contract, and negligence—are time-barred.  I address each in turn.

## B.     Fraud

In Part II(C)(1), I concluded that the only alleged statement that might support a fraud claim is Oakes's promise to repair.  LH Housing argues that any such fraud claim accrued when Oakes allegedly made the statement.  That occurred on an unspecified date before August 1, 2015, which is more than six years before the filing of the complaint on August 24, 2021.  The Thaos respond that, per 14 M.R.S.A. § 859, the six years they had to pursue their fraud claim began when they discovered the cause of action.  According to the complaint, the Thaos discovered the falsity of Oakes's statement on August 1, 2015, when they moved in and saw the repairs had not been made.

Because any cause of action for fraud would have accrued by August 1, 2015, and because the Thaos discovered their cause of action then, the Thaos' fraud claim

is time-barred because the Thaos filed their complaint more than six years after August 1, 2015.

## C.    Negligent Misrepresentation

LH Housing argues that any negligent misrepresentations would have happened before August 1, 2015, more than six years before the filing of the complaint. The Thaos respond that the negligent misrepresentations include more than the pre-move-in promise to repair. In Part II(C)(2), I concluded that the Thaos sufficiently plead a cause of action for negligent misrepresentation based on LH Housing's statement that the Thaos should not enter the basement because it was a "separate unit." The Thaos allege that LH Housing made this statement sometime before early October 2015.

Given the lack of specificity as to the date, the motion-to-dismiss record does not "show beyond doubt that the claim asserted is out of time." *Rodi*, 389 F.3d at 17. For this reason, LH Housing has not proven its affirmative defense with respect to the negligent misrepresentation claim.

## D.    Breach of Contract

LH Housing argues that the breach of contract claim arose either before the Thaos signed the lease, or, at the latest, on August 1, 2015, when they moved in. According to LH Housing, the condition of the property allegedly violated the lease agreement on one of those two dates. The Thaos counter that the alleged breach of contract started on August 31, 2015—not when they moved in.

The complaint frames the alleged breach as LH Housing's failure to redress certain conditions after the Thaos reported them. Per the complaint, (1) the lease

agreement required the Thaos to immediately report evidence of water leaks; excessive moisture; mildew; mold; and malfunctions with the heating, ventilation, and air-condition systems, and (2) this requirement constituted an implied covenant that LH Housing would address those problems as they were reported. The complaint is ambiguous as to when the Thaos first reported any of those problems; however, when read most favorably to the Thaos, it appears to imply that the first report happened on August 31, 2015. Because fewer than six years elapsed between the filing of the complaint and when LH Housing allegedly breached the lease agreement by refusing to provide a bargained-for benefit, the breach of contract claim is not time-barred.

## E.    Negligence

LH Housing next argues that the Thaos' negligence claim accrued prior to or when the lease was signed because that is when LH Housing allegedly failed to disclose the extent of the home's latent defects. The negligence claim, however, is broader than LH Housing recognizes. The Thaos allege that LH Housing breached, among other duties, a duty to take reasonable steps to ensure that their personal property was not further damaged. Thus, at least some of LH Housing's allegedly negligent conduct is alleged to have happened within six years of the filing of the complaint. For example, the alleged negligent treatment of the Thaos' personal property after they moved out did not begin until late October 2015. For that reason, the motion to dismiss is denied with respect to the negligence claim against LH Housing.

## IV.  CONCLUSION

For the foregoing reasons, LH Housing, LLC and Eric Holsapple's Motion to Dismiss (ECF No. 6) is **GRANTED IN PART** with respect to all claims against Holsapple, the MUTPA claim against LH Housing brought by the Thao children, the MUFTA claim against LH Housing, and the fraud claim against LH Housing, and is **DENIED IN PART** in all other respects.  The complaint (ECF No. 1) is **DISMISSED** as to Holsapple.

**SO ORDERED.**

**Dated:  August 10, 2022**

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**

25